## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ECM ASSOCIATED, LLC, and
WERNER ENTERPRISES, INC.,

        Plaintiffs,

    v.

EDWARD C. MEIER, PHYLLIS
MEIER, EDWARD C. MEIER JR.,
COURTNEY MEIER, ALEXIS MEIER,
DANIELLE VARDIS, ECO
INDUSTRIES, INC., and FICTITIOUS
ENTITY XYZ,

        Defendants.

Civil Action No. 2:24-cv-01698

## VERIFIED COMPLAINT

Plaintiffs ECM Associated, LLC ("ECM") and Werner Enterprises Inc. ("Werner") (collectively, "Plaintiffs"), by and through their undersigned counsel, file the within Verified Complaint against six dishonest and disloyal former employees, Edward C. Meier ("Meier Sr."), Phyllis Meier ("Meier Mom"), Edward C. Meier Jr. ("Meier Jr."),  Courtney Meier, and Alexis Meier (Meier Jr., Courtney, and Alexis collectively, the "Remaining Meier Children") (all collectively, the "Meier Family"), Danielle Vardis ("Ms. Vardis"), as well as two corporate entities, ECO Industries, Inc. ("ECO"), and Fictitious Entity XYZ ("XYZ" or "Newco").

## INTRODUCTION

1.      Less than two months ago, Meier Sr., the former President and CEO of ECM and a minority member of ECM through ECO, and Mom Meier, a former ECM employee, stole at least 7,900 pages of confidential documents from ECM's offices. In the months leading up to this theft, Mom Meier had been systematically accessing and emailing to a private account ECM's confidential and trade secret information, including financial information, customer contact

information, employee and customer data, pricing, and proprietary processes. Shortly thereafter, Meier Sr. and ECO filed a lawsuit against ECM and Werner seeking, among other things, yet more confidential financial records belonging to ECM.

Plaintiffs have learned that the Meiers and their co-conspirators began using the stolen information to mislead and solicit ECM's customers. They have falsely told at least one existing customer that ECM could not handle the work but that *ECM* was creating a new entity and the new entity could assist. Upon information and belief, the Meiers and their co-conspirators under the stewardship of Meier Sr. are creating a new company and attempting to divert customers to it by falsely claiming that it is affiliated with ECM (and, by implication, Werner). They are also attempting to solicit current employees of ECM.

These actions constitute fraud, violate restrictive covenants, and breach state and federal laws, causing irreparable harm. Plaintiffs seek a temporary restraining order and preliminary injunction to stop Defendants from further harm.

## PARTIES

2.    Werner Enterprises Inc. ("Werner") is a Delaware corporation with a principal place of business at 14507 Frontier Road, Omaha, Nebraska 68138.

3.    ECM Associated, LLC ("ECM") is a Delaware corporation with a principal place of business at 1 Rich Hill Road, Cheswick, Allegheny County, Pennsylvania 150024.

4.    Edward C. Meier ("Meier Sr.") is an adult individual who, upon information and belief, resides at 4415 Garvers Ferry Road, New Kensington, Pennsylvania 15068.

5.    Phyllis Meier ("Meier Mom") is an adult individual who, upon information and belief, resides at 4415 Garvers Ferry Road, New Kensington, Pennsylvania 15068.

6.    Edward C. Meier ("Meier Jr.") is an adult individual who, upon information and belief, resides at 126 Lorien Drive, Jeannette, PA 15644.

7.      Courtney Meier is an adult individual who, upon information and belief, resides at 4417 Garvers Ferry Road, New Kensington, Pennsylvania 15068.

8.      Alexis Meier is an adult individual who, upon information and belief, resides at 1090 White Cloud Road, Apollo, PA 15613.

9.      Danielle Vardis ("Ms. Vardis") is an adult individual who, upon information and belief, resides at 921 Chester Street, Springdale, PA 15144.

10.     Upon information and belief, ECO Industries, Inc. ("ECO") is a Pennsylvania corporation with a principal place of business at 1460 Greensburg Road, New Kensington, Pennsylvania, 15068.  It is a corporate entity that is owned and operated by the Meier Family.

11.     XYZ or Newco is an entity that, upon information and belief, has been formed by some or all of the Meier Family or will be formed for purposes of perpetrating the wrongs alleged herein.

## JURISDICTION AND VENUE

12.     This Court has subject matter jurisdiction over this civil action under 28 U.S.C. § 1331 because the case arises, in part, under the federal Defend Trade Secrets Act, 18 U.S.C. § 1831 *et seq* and the Lanham Act, 15 U.S.C. § 1125(a).

13.     This Court has supplemental jurisdiction over the state law claims in this action under 28 U.S.C. § 1367 because such claims are so closely related to the Defend Trade Secrets Act and/or Lanham Act claim that they arise out of the same case and controversy.

14.     This Court has personal jurisdiction over the Meier Family Defendants and Ms. Vardis because they reside within this District.

15.     This Court has personal jurisdiction over ECO and Newco pursuant to Rule 4(k)(1)(A) of the Federal Rules of Civil Procedure, as ECO and Newco are both subject to jurisdiction in the courts of general jurisdiction in the Commonwealth of Pennsylvania.

16.     Venue is proper under 28 U.S.C. § 1391 because Defendants reside in this District and all or a substantial part of the events giving rise to Plaintiff's claims occurred in this District.

17.     Moreover, pursuant to ¶ 14 of the Executive Employment Agreement (the "Employment Agreement") between ECM and Meier Sr., the parties agreed that "any action by a party to enforce the terms of this Agreement shall be brought by such party only in an appropriate state or federal court located in the Commonwealth of Pennsylvania…."

18.     Prior to initiating this action, Plaintiffs issued the notice attached here as Exhibit 1. In paragraph 15.7 of the Third Amended and Restated Limited Liability Company Agreement, the parties agreed that, "[i]n the event of any actual or prospective breach or default by any party, the other parties shall be entitled to equitable relief, including remedies in the nature of injunction and specific performance (without being required to post a bond or other security or to establish any actual damages)."

## **FACTUAL BACKGROUND**

### A.     **Relevant background.**

#### (a)     **Werner grew out of its founder's home and is now one of the largest transportation and logistics companies.**

19.     In 1956, Clarence Werner sold his family vehicle for a truck and began hauling cargo for other companies.

20.     Less than ten years later, Mr. Werner was able to move his company out of his home and into an office in Iowa.

21.     Operations resided in Iowa until 1977 when Werner moved its corporate headquarters to its current location in Omaha, Nebraska.

22.     By 1999, Werner had expanded its operations throughout the United States and into Mexico, reaching one billion dollars in revenue.

23.     Werner is now one of the largest truckload and less-than-truckload carriers in America.

24.     In or around 2021, Werner wanted to expand its operations in the Mid-Atlantic, Ohio, and Northeast regions and began to look for potential business ventures on this side of the country.

**(b)     The Meier Family is involved in the formation of a Mid-Atlantic trucking company, ECM Transport, LLC.**

25.     Meier Sr. has been in the trucking industry since approximately 1978.

26.     In or around 1988, an entity called ECM Transport, LLC was created to operate as a small six truck, twelve trailer Pennsylvania-based truckload carrier.

27.     Meier Sr. was the president of ECM Transport, LLC and owned a significant stake in it.

28.     The other members of the Meier Family were also employed by ECM Transport, LLC.

29.     Meier Sr. is the sole shareholder of another company called ECO.

30.     Upon information and belief, ECO is the entity through which Meier Sr. has exercised an ownership interest in ECM Transport, LLC.

**(c)     Werner takes a majority share of ECM to continue its expansion into the Mid-Atlantic region; Meier Family entity, ECO, becomes a minority member of ECM.**

31.     In 2021, ECM Transport, LLC became ECM Associated, LLC, a similarly-named entity that had a very different ownership structure.  ECM Associated, LLC is a Plaintiff here and is referred to herein as just "ECM."

32. The transformation allowed ECM Transport, LLC to develop a formal relationship with Werner, a well-established and significant trucking and logistics company with long-standing business practices and relationships that have allowed its business to thrive.

33. ECM was created pursuant to a Unit Purchase Agreement dated July 1, 2021.

34. ECO and, therefore, Meier Sr. retained a minority interest in ECM.

35. Werner acquired the remaining interest such that the members of ECM are ECO and Werner.

36. As part of the corporate transformation, ECM was re-domesticated from a Pennsylvania limited liability company and converted to a Delaware limited liability company.

**(d)** **Meier Sr. agrees to a lucrative employment agreement that includes important restrictions on competition, solicitation, and use of ECM/Werner information, among other things.**

37. In conjunction with the Unit Purchase Agreement, ECM, Werner and Meier Sr. entered into the Employment Agreement, which allowed Meier Sr. to continue in the role of President and CEO provided that he exercise those duties in good faith, with the care an ordinarily prudent person in a like position would exercise under similar circumstances.

38. Pursuant to the Employment Agreement, Meier was granted an annual salary of $350,000 for a term of five years and was eligible to participate in certain incentive compensation and benefit plans.

39. The Employment Agreement specified that it could be terminated prior to the conclusion of the term for "cause," among other things.

40. Meier Sr. acknowledged that both ECM and Werner "expended and will continue to expend considerable time, effort and resources to develop and market their respective products and services and that the relationships (i) between [ECM] and its employees, business partners, independent contractors, customers, vendors, and suppliers are valuable assets of Company and

key to its success, and that employees of Company establish close professional relationships with other employees, independent contractors, customers, vendors, and suppliers of [ECM] in the course of their relationship with [ECM], all of which constitute goodwill of [ECM], and (ii) between Werner and its employees, business partners, independent contractors, customers, vendors, and suppliers are valuable assets of Werner and key to its success, and that employees of Werner establish close professional relationships with other employees, independent contractors, customers, vendors, and suppliers of Werner in the course of their relationship with Werner, all of which constitute goodwill of Werner…"  Employment Agreement, Para. 10.

41.     Meier Sr. agreed that he would not disclose confidential information:

a.     <u>Confidential Information</u>. Executive acknowledges that Executive's employment with Company involves exposure to, familiarity with, and the opportunity to learn highly sensitive, confidential and proprietary information of Company and/or Werner and their respective affiliates (collectively referred to herein as "<u>Confidential Information</u>"). Executive expressly acknowledges and agrees that Confidential Information may include, without limitation, confidential and proprietary information belonging to various third parties, such as affiliates, vendors, agents or customers and prospective customers of both Company and Werner, but which is entrusted to Company for use by Company to conduct its business or to conduct business on behalf of Werner. The failure to mark or designate information as "confidential" or "proprietary" shall not prevent information accessed by or disclosed to Executive from being deemed Confidential Information under this Agreement.

b.     <u>Duties</u>. Executive acknowledges that the Confidential Information is a valuable, special and unique asset of Company (or to the extent applicable, Werner), such that the unauthorized disclosure or use by Executive or persons or entities outside Company would cause irreparable damage to the business of Company and/or Werner. Accordingly, Executive agrees that Executive shall not directly or indirectly disclose to any person or entity or use for any purpose or permit the exploitation, copying or summarizing of any Confidential Information of Company and/or Werner, except as required in the proper performance of Executive's duties for Company (or to the extent applicable, any duties performed by Executive on behalf of Werner). Executive represents and warrants that no such impermissible disclosure or use has occurred prior to the date hereof. Company represents and warrants, and Executive acknowledges, that Company has instituted, and will continue to institute, update, and amend, policies and procedures designed to protect the confidentiality and security of Company's and Werner's Confidential Information.

42.     Meier Sr. further agreed that "much of their Confidential Information" also "constitute[s] trade secrets" and that such trade secrets "have independent value, provide [ECM] and Werner with a competitive advantage over their respective competitors who do not know the trade secrets and are protected from unauthorized disclosure under applicable law."  Employment Agreement, Para. 8(c).

43.     Meier Sr. agreed that the confidential information that he obtained "shall remain the sole and exclusive property of the disclosing entity, regardless of whether [Meier Sr.] has possession or control of such [c]onfidential [i]nformation."  Meier Sr. promised that he would return and not keep any confidential information "in any form or medium" following the termination of his employment.  Employment Agreement, Para. 8(d).

44.     Meier Sr. also transferred any right, title, and interest in any intellectual property developed by Meier Sr. that was developed using ECM or Werner equipment, supplies, facilities, and/or confidential information, resulting directly or indirectly from work performed for ECM or Werner by Meier Sr., or related, in whole or in part, to ECM's or Werner's actual or anticipated products or services or is within the scope of ECM's or Werner's actual or anticipated business operations are, and shall be, the exclusive property of ECM or Werner.  Accordingly, Meier Sr. assigned, transferred, and conveyed his right, title, and interest to all such intellectual property to ECM or Werner, respectively.   Employment Agreement, Para. 9.

45.     Meier Sr. also promised that, during the course of his employment and during the 24 months following his termination, he would not be involved in an entity or business that competes with ECM or Werner to the extent that such involvement would involve Meier Sr.'s performance of services of the type conducted by Meier Sr. while working on behalf of Werner or ECM within the 12 months period prior to the termination of Meier Sr.'s involvement:

11.    **Non-Competition.** In order to prevent the improper use of Confidential Information and the resulting unfair competition and misappropriation of Goodwill, Trade Secrets, Intellectual Property, and other proprietary interests, Executive agrees that while Executive is employed by Company and during the Restricted Period, Executive shall not, other than on behalf of Company (or Werner to the extent applicable) in the performance of Executive's duties and responsibilities as authorized by Company and/or Werner, directly or indirectly, within the United States of America, be involved as an owner, partner, shareholder, joint venture, director, employee, agent, independent contractor, or otherwise of any entity or business that competes with Company or Werner to the extent such involvement would involve Executive's performance of services of the type conducted, authorized, offered, provided, or supervised by Executive while working on behalf of Company (or Werner) within the twelve (12) month period prior to the termination of Executive's employment. For purposes of this Agreement, the term "Restricted Period" means a period of twenty-four (24) months following the termination of Executive's employment for any reason whatsoever, whether such termination is voluntary or involuntary, and regardless of cause. Nothing in this Agreement shall prohibit Executive from purchasing or owning less than three percent (3%) of the publicly traded securities of any corporation, provided that such ownership represents a passive investment and that Executive is not a controlling person of, or a member of a group that controls, such corporation.

46.    Moreover, Meier Sr. promised that he would not, on his own behalf or by aiding any other individual or entity, solicit the business of customers of ECM or Werner (with whom he had contact during the 12 months prior to his termination) or any employee of ECM or Werner (with whom he had worked during the 12 months prior to his termination):

12.    **Non-Solicitation.** In order to prevent the improper use of Confidential Information and the resulting unfair competition and misappropriation of Goodwill, Trade Secrets, Intellectual Property, and other proprietary interests, Executive agrees that while Executive is employed by Company and during the Restricted Period, Executive will not, directly or indirectly, on Executive's own behalf or by aiding any other individual or entity:

a.    call on, solicit the business of, sell to, service, or accept business from, any customers of Company or Werner (with whom Executive had contact, or about whom Executive accessed Confidential Information, during the twelve (12) months immediately prior to the termination of Executive's employment) for the purpose of providing said customers with products or services of the type or character typically provided to such customers by Company or Werner (as applicable); or

b.    recruit, hire, or solicit for employment any employee of Company or Werner (with whom Executive worked during the twelve (12) months immediately prior to the termination of Executive's employment).

47.     In addition to Meier Sr., ECM continued to employ the other members of the Meier Family.

### (e)     ECM enters an agreement to govern the rights and obligations of ECM, its Members and the ECM Board.

48.     On or about July 1, 2021, ECM and its members agreed to become parties to the Second Amended and Restated Operating Agreement.

49.     Thereafter, on or about July 2, 2021, the Third Amended and Restated Limited Liability Company Agreement ("Operative LLC Agreement") was agreed to by ECM, Werner, and ECO.

50.     The Operative LLC Agreement was intended to restate the Second Amended and Restated Operating Agreement and to govern the respective rights and obligations of ECM, Werner, ECO, and the Board.

51.     Among other things, ECO and Meier Sr. agreed that for so long as ECO remained a member of ECM and for a period of three years thereafter, ECO and Meier Sr. "shall not, directly or indirectly through any other person":

(a)    (i) employ, solicit or induce any individual who is, or was at any time during the twelve (12) month period prior to the Effective Date, an employee, consultant, agent or contractor of Werner, the Company, or any Subsidiary or any of their respective Affiliates; (ii) cause such individual to terminate or refrain from renewing or extending his or her employment by, or consulting relationship with, Werner, the Company, or any Subsidiary or any of their respective Affiliates; or (iii) cause such individual to become employed by or enter into a consulting relationship with ECO, Meier, their respective Affiliates or any other Person;

(b)    solicit, persuade or induce any current, former, or prospective client or customer to terminate, reduce or refrain from renewing or extending its contractual or other relationship with Werner, the Company, or any Subsidiary or any of their respective Affiliates, or to become a client or customer of or enter into any contractual or other relationship with any competitor of Werner, the Company, or any Subsidiary or any of their respective Affiliates;

(c)    solicit, persuade, or induce any current or former vendor, supplier, lessor, licensor, sales representative, dealer, distributor or other business associate, to terminate, reduce or refrain from renewing or extending his, her or its contractual or other business relationship with Werner, the Company, or any Subsidiary or any of their respective Affiliates or to become a supplier or agent of or enter into any contractual or other business relationship with ECO, Meier, or any of their respective Affiliates, directly or indirectly, in regard to the sale of products or services similar or identical to those purchased by Werner, the Company, or any Subsidiary or any of their respective Affiliates; or

52

4888-5915-7762.2

elope ID: F0466144-6069-42EC-9509-CD12820670AA

(d)    in any way take any affirmative action that is intended to have the effect of discouraging any current, former, or prospective client, customer, vendor, lessor, licensor, supplier, sales representative, dealer, distributor or other business associate of Werner, the Company, or any Subsidiary or any of their respective Affiliates from maintaining the same business relationships with Werner, the Company, or any Subsidiary or any of their respective Affiliates.

52.    ECO and Meier Sr. further agreed that they would not compete with ECM's business for the same three-year period:

14.2    Non-Competition.  ECO and Meier shall not, during the Restricted Period, directly or indirectly, in their own capacity or through any other Person, whether as owner, consultant, executive, partner, member, manager, officer, director, sales representative, venturer, agent, through equity ownership, investment of capital, lending of money or property, rendering of services, or otherwise, engage, prepare to engage, or assist others to engage, directly or indirectly, in the Business in the United States of America other than (a) as an employee of, or consultant to, Werner, the Company, or any Subsidiary or any of their respective Affiliates; or (b) owning shares of stock of any corporation having a class of equity securities actively traded on a national securities exchange or on the Nasdaq Stock Market which represent, in the aggregate, not more than one percent (1%) of such corporation's fully-diluted shares.

53.    Further, ECO and Meier Sr. promised not to disparage Werner or ECM and others associated with same:

14.3    Non-Disparagement.  ECO and Meier shall not, directly or indirectly, (a) in any way publicly disparage Werner, the Company, or any Subsidiary or any of their respective Affiliates, equity holders, officers, managers, directors, employees or agents or the Business, (b) knowingly cause embarrassment or public humiliation to such entities or Persons, or (c) make any public statement or take any action that is adverse, inimical or otherwise detrimental to the reputation of any such entities or Persons or the Business.

54.    In the event that any of the non-compete, non-solicit, and non-disparagement clauses are breached, ECO and Meier Sr. agreed that it would cause "irreparable damage" to Werner and ECM, among others, the amount of such damage would be "difficult to ascertain," and the remedies at law would be "inadequate."  "Accordingly, ECO and Meier [Sr.] agree that, in addition to any other remedy which may be available at law or in equity, Werner, [ECM], and the Subsidiaries shall be entitled to specific performance and injunctive relief to prevent any actual, intended or likely breach…."  Operative LLC Agreement, at Para. 14.4.

55.    Aside from this carve out for injunctive relief, the Operative LLC Agreement otherwise provides for binding arbitration administered by the American Arbitration Association under its Commercial Arbitration Rules.  Operative LLC Agreement, at Para. 15.6.

(f)    **The Werner and Meier Family relationship struggles from the outset.**

56.    Initially, Werner allowed Meier Sr. to manage ECM as he had previously and consistent with his representations that he was qualified and competent to do so.

57.    It became clear by 2023, that Meier Sr. was not performing as reasonably expected.

58.    As a result, Werner sent an executive, Angelo Gibson, to assist with the day-to-day management of ECM.  Declaration of Angelo Gibson attached hereto at Exhibit 2.

59.    In addition to Meier Sr.'s managerial incompetence, it was also apparent that there was a cultural rift between the Meier "loyalists" and Werner.

60.    Certain of the employees who remained with ECM following the combination with Werner were openly hostile to Werner and its employees, including members of the Meier Family and Ms. Vardis.

61.    By way of example, Ms. Vardis received numerous write-ups and referred to local management as "these Werner motherf***ers."

62.    Ms. Vardis was terminated in November 2024.

(g)    **Mom Meier sends confidential and proprietary ECM and Werner Information to a personal email account.**

63.    In or around June 2024, as the relationship with the Meier Family continued to deteriorate, Werner and ECM learned that Mom Meier had been forwarding documents containing valuable confidential and proprietary data (e.g., driver information, financial information, business plans, customer information (including name, contact, and order information), as well as internal procedures, processes, and policies) belonging to both Werner and ECM to a personal email account. By way of example, employee names, titles, and other information regarding their employment status (e.g., full vs. part time); driver and truck count; production figures, including tractor status, production metrics by driver, tractor status, revenue per truck, deadhead percentage,

7 day production, total miles on an annualized basis and by month; weekly summary of stops by driver (including a list of ECM drivers and how they are paid); an office handbook that was in the process of being reviewed by human resources and legal; truck information, including VIN, status, type, city, state, engine type, model year, odometer, and years in service; as well as information regarding customers and invoice information (company name, freight type, miles, total revenue and a comparison to prior time periods)).

64.    Meier Sr. assisted with compiling confidential, proprietary, and trade secret information by forwarding things to Mom Meier who then promptly forwarded the materials to her personal email address.

65.    Mom Meier admitted the misconduct but, at the time, claimed that it was a "good faith disclosure" of admittedly confidential information in support of ECM's operations.

66.    Mom Meier agreed that she would "not use any of the Company's Confidential Information which [she] forwarded to myself in the future for any purpose or in any manner, and [she] further acknowledge[d], [understood] and agree[d] that [she] [would] neither forward the Company's Confidential Information to [herself] again, nor download or save such Confidential Information to any external unapproved sources."

67.    In exchange for Mom Meier's promise, ECM continued to employ her.

68.    Relatively shortly thereafter, it became clear that Mom Meier was not adding value to ECM and, consequently, she was terminated in October 2024.

(h)    **Meier Sr. and Mom Meier steal several boxes of ECM documents.**

69.    A few weeks after Mom Meier was terminated, on or about October 16, 2024, in the dark of night, Meier Sr. and Mom Meier were caught on video loading several boxes of documents into a truck.

70.    ECM and Werner were advised of the heist and have evidence of same.

71.     Among other things, Mom Meier and Meier Sr. stole records showing the names of drivers, compensation of same, and other matters that would be beneficial to them as they unfairly compete with ECM.

72.     Swift action was taken:  Mom Meier, who had already been terminated, was sent a cease and desist letter, and Meier Sr. was terminated.

73.     Mom Meier and Meier Sr. were instructed to return all company property and documents in their possession in accordance with Paragraph 8(d) of the Employment Agreement, including but not limited to the stolen documents.

74.     Eventually, a lawyer for Mom Meier and Meier Sr. contacted ECM and Werner and agreed to return the boxes of documents that were stolen.

75.     It is not known whether copies were made of the stolen documents or if all the documents were in fact returned.

<strong>(i)</strong>      <strong><u>Meier Sr. and ECO file a baseless lawsuit against ECM and Werner seeking additional financial information, among other things.</u></strong>

76.     About two weeks after Werner and ECM learned of the theft of its confidential, proprietary, and trade secret information, on November 26, 2024, Meier Sr. and his company, ECO, with the assistance of the same lawyer who facilitated the physical return of the stolen boxes of documents, sued them in Pennsylvania State Court, seeking equitable and injunctive relief (the "Pennsylvania Lawsuit"), among other things.  *See* Allegheny County Court of Common Pleas, GD-24-013662.

77.     Meier Sr.'s and ECO's allegations are bold, claiming that Werner and/or ECM engaged in "oppression, fraud or illegality."  Compl., ¶ 37.

78.     Meier Sr. and ECO have asked for the corporate records of ECM, including financial records, and "aver[red] that the request [was] made for a proper purpose."

79.    Meier Sr. and ECO are also asking the Pennsylvania State Court to "wind up or dissolve" ECM (or, alternatively, to re-appoint Meier as president and CEO).

80.    No response has yet been filed to the Pennsylvania Lawsuit.

81.    It is believed and, therefore, averred, that the Pennsylvania Lawsuit is intended to use the legal system to acquire additional information that the Meier Family plans to use to unfairly compete with ECM by soliciting their clients and employees.

### (j)    ECM terminates the Remaining Meier Children.

82.    A month after the Pennsylvania Lawsuit was filed, on or about December 11, 2024, ECM terminated the Remaining Meier Children.

83.    ECM explained that the Remaining Meier Children were at-will employees who could be terminated for any reason or no reason.  But ECM also explained that it had made the difficult decision to terminate the Remaining Meier Children because of the conduct of Meier Sr. and Mom Meier stealing from the Company and then making false accusations against it.

84.    ECM shut down the Remaining Meier Children's email accounts immediately.

### (k)    Plaintiffs learned that the Meier Family is soliciting ECM and Werner clients and employees and unfairly competing with it, necessitating the emergency relief sought.

85.    Less than 12 hours after terminating the Remaining Meier children, ECM learned troubling information that will cause it imminent and material harm.

86.    ECM and Werner have been informed by an existing customer that Meier Jr. has told its customers that "ECM has another company in the works for your yard jockey needs" and that former ECM employee Ms. Vardis would give him a call.

87.    Meier Jr.'s statement is false – ECM is not creating another entity.  Moreover, it appears intended to deceive the customer into the belief that Newco is an entity that is also affiliated with Warner and/or ECM.

88.     Ms. Vardis immediately texted the customer to follow up: "It's Danielle just making sure you got my email and I had the right number!  Let's chat tomorrow if you are free[.]"

89.     Meier Jr. also continued to reach out to the customer repeatedly.

90.     This particular customer has a long-standing relationship with Werner, which brokers over 500 loads for it per month yielding millions of dollars in fees.

91.     Another customer has advised ECM and Werner that Courtney Meier had called it on December 12, 2024 to solicit business.

92.     This particular customer is also on the brokerage side, which is highly competitive and entirely dependent on rates – the lowest rate gets the work.

93.     In addition, Werner also has knowledge that the day after the Remaining Meier Children were terminated, Courtney Meier was calling existing ECM employees. For example, Courtney Meier called an employee the day after she was terminated asking about brokerage accounts, telling him that her family "cared" about him, and would be in touch soon. She also promised to call other employees as well. *See* Declaration of William Newman attached hereto at Exhibit 3. Upon information and belief, the Meier Family is attempting to solicit ECM employees to go to work for Newco.

94.     It is believed and, therefore, averred that Meier Sr. is using the other Defendants to act in his interests so that they can use ECM and/or Werner's confidential and trade secret information to unfairly compete with ECM and/or Werner.

95.     The thousands of files that Meier Sr. and Mom Meier stole now make sense:  the Meier Family was plotting the creation of their own entity and is using those records to identify employees and customers that they can poach.

96.    ECM and Werner know about the solicitations alleged herein because certain customers and employees solicited had the courtesy to notify them of the improper approaches by the Meier Family.  These surely are not the only efforts that the Meier Family has or intends to undertake to perpetrate its revenge on ECM and Werner.

97.    It is alleged upon information and belief that the Meier Family is creating a new company that has been enriched with ECM and Werner's trade secrets and confidential information about customers, processes, employees, business plans and strategies, and financials.

### COUNT I  - VIOLATION OF THE DEFEND TRADE SECRETS ACT
### (AS TO ALL DEFENDANTS)

98.    Plaintiffs incorporate by reference the preceding Paragraphs of the Verified Complaint as if fully set forth herein.

99.    Upon information and belief, Defendants are inappropriately utilizing the confidential information of which it improperly obtained from Plaintiffs.

100.    Upon information and belief, Defendants are utilizing the confidential information for their own personal gain and benefit without the permission of Plaintiffs.

101.    Plaintiffs bring this Count to secure equitable and other relief from Defendants' use and disclosure, constituting misappropriation of Plaintiffs' Trade Secrets in violation of United States law. Pursuant to 18 U.S.C. § 1836(b)(1), Plaintiffs may maintain a private civil action against Defendants.

102.    During the period of their employment and retention with Plaintiff ECM, Defendants were provided with access to certain confidential materials and information to carry out their job duties. This information was to be used solely for the purposes of carrying out their job responsibilities for Plaintiff ECM's benefit, and Defendants were required to protect such confidential information from disclosure.

103.     The confidential information includes, among other things, customer lists, contact and order information (including pricing) which Defendants developed as tools for operating their business; driver information; business plans and strategy; financial information; and internal procedures, processes and policies.  The confidential information is especially valuable having required many years and financial resources to amass. The confidential information is not otherwise available to competitors or to the public.

104.     Defendants were and are aware of these obligations, as well as the confidential and proprietary nature of the materials and information.

105.     Defendants' unlawful use of the confidential information is a misappropriation of such information in violation of United States law.

106.     Defendants' conduct is willful, malicious, and in bad faith.

107.     As a direct and proximate consequence of Defendants' conduct, Plaintiffs have suffered substantial damages, including interference with Plaintiffs' advantageous business and contractual relations, loss of trade secrets and other confidential information, and harm which cannot be readily ascertained or compensated by money damages. As a consequence, Plaintiffs seek preliminary and permanent equitable relief and monetary relief.

108.     Defendants' conduct is willful, malicious, and deliberate. As such Plaintiffs seek enhanced double damages and attorney's fees as permitted by law.

109.     Defendants' misappropriation of Plaintiffs' confidential Information and Trade Secrets will cause Plaintiffs to suffer irreparable harm, for which they have no adequate remedy at law.

110.     The threatened and actual injuries that Plaintiffs are and will continue to suffer through Defendants' actions are immediate and irreparable.

111.    Because of the difficulty in quantifying injury and harm to Plaintiffs' ability to compete, acquire, and maintain a competitive advantage through their Confidential Information and Trade Secrets, monetary damages alone will not adequately compensate Plaintiffs for Defendants' wrongful use of such information and breach of their legal duties to Plaintiffs.

112.    Plaintiffs, therefore, lack an adequate and complete remedy at law and an equitable remedy is appropriate in addition to monetary damages.

113.    Under Section 1836 of the Defend Trade Secrets Act, Plaintiffs are entitled to injunctive relief, compensatory damages, exemplary damages, an award of reasonable attorneys' fees and/or other appropriate relief.

### COUNT II - MISAPPROPRIATION OF TRADE SECRETS UNDER THE PENNSYLVANIA UNIFORM TRADE SECRETS ACT (12 PA.C.S. §§ 5301-5308) (AS TO ALL DEFENDANTS)

114.    Plaintiffs incorporate by reference the preceding Paragraphs of the Verified Complaint as if fully set forth herein.

115.    Plaintiffs provided Defendants with the confidential information to carry out their job duties. Defendants' job duties included using such information to serve Plaintiffs' customers, developing such information for Plaintiffs' benefit, and protecting such confidential information from disclosure.

116.    The confidential information identified herein qualify as trade secrets under the relevant statute.

117.    Defendants are using and/or threatening to use Plaintiffs' Confidential Information, which they learned through their employment at ECM and through Meier Sr. and Meier Mom's unauthorized disclosure of the confidential information gained from Meier Sr. and Meier Mom's employment and retention with Plaintiff ECM as well as their theft of thousands of pages of ECM and Werner records. Such conduct violates the statute.

118.    As a direct and proximate consequence of Defendants' conduct, Plaintiffs have suffered substantial harm, including interference with Plaintiffs' advantageous business and contractual relations, loss of trade secrets and other confidential information, and harm which cannot be readily ascertainable or compensated by money damages.

119.    As a consequence, Plaintiffs seek preliminary and permanent equitable relief and monetary relief.

120.    Defendants' conduct is willful, malicious, and deliberate. As such Plaintiffs seek enhanced double damages and attorney's fees.

## COUNT III - UNFAIR COMPETITION UNDER FEDERAL LAW (15 U.S.C. § 1125(A)) (AS TO ALL DEFENDANTS)

121.    Plaintiffs incorporate by reference the preceding Paragraphs of the Verified Complaint as if fully set forth herein.

122.    Defendants have intentionally utilized Plaintiffs' confidential information to solicit Plaintiffs' customers and prospective customers and employees to harm Plaintiffs' business relationships.

123.    This use by Defendants is not a fair use of the confidential information but an infringement of Plaintiffs' proprietary intellectual property rights. Defendants have no authorization to disclose the confidential information to Defendant ECO, Newco, nor to any other individual or entity.

124.    Defendants' unauthorized use in commerce of the confidential information provides an unfair advantage to Defendants, which have not had to develop such information at its own considerable time and expense.

125.    Defendants' conduct as alleged herein constitutes unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

126.    Defendants' conduct as alleged herein is causing immediate and irreparable harm and injury to Plaintiffs, including injury to Plaintiffs' goodwill and reputation, and will continue to damage Plaintiffs unless enjoined by this Court.

127.    Plaintiffs have no adequate remedy at law.

128.    Plaintiffs are entitled to, among other relief, injunctive relief and an award of actual damages, disgorgement of Defendants' profits, enhanced damages for willful conduct and lost profits, reasonable attorneys' fees, and costs under Sections 34 and 35 of the Lanham Act, 15 U.S.C. §§ 1116, 1117, together with pre- and post-judgment interest.

## COUNT IV – PENNSYLVANIA UNFAIR COMPETITION
### (AS TO DEFENDANTS)

129.    Plaintiffs incorporate by reference the preceding Paragraphs of the Verified Complaint as if fully set forth herein.

130.    Defendants have intentionally utilized the confidential information to solicit Plaintiffs' customers and prospective customers and employees to harm Plaintiffs' business relationships.

131.    This use by Defendants is not a fair use of the confidential information but an infringement of Plaintiffs' proprietary intellectual property rights.

132.    Defendants' unauthorized use in commerce of the Confidential Information provides an unfair advantage to Newco, which has not had to develop such information at its own considerable time and expense.

133.    Defendants' conduct as alleged herein constitutes unfair competition in violation of Pennsylvania law.

134.    Defendants' conduct as alleged herein is causing immediate and irreparable harm and injury to Plaintiffs, including injury to Plaintiffs' goodwill and reputation, and will continue to damage Plaintiffs unless enjoined by this Court.

135.    Plaintiffs have no adequate remedy at law.

136.    As a result, Plaintiffs have suffered damages, including lost revenue and lost trade secrets.

## COUNT V – BREACH OF THE EMPLOYMENT AGREEMENT
## (AS TO EDWARD C. MEIER)

137.    Plaintiffs incorporate by reference the preceding Paragraphs of the Verified Complaint as if fully set forth herein.

138.    The Employment Agreement is a valid, enforceable contract supported by adequate consideration entered into voluntarily and knowingly by Meier Sr., a sophisticated businessperson.

139.    Meier Sr. has breached (and continues to breach) the Employment Agreement by, among other things, stealing Plaintiffs' confidential information, disparaging Plaintiffs, and soliciting Plaintiff's existing and prospective customers and employees for Plaintiffs' direct competitor, ECO and/or Newco.  Meier Sr. has engaged in the prohibited conduct either directly or indirectly through the individual Defendants.

140.    The post-employment restrictions, including but not limited to, the non-solicit and the non-compete, contained in Meier Sr.'s Employment Agreement are reasonably limited to protect Plaintiffs' legitimate business interests.

141.    All duties and obligations outlined in the Employment Agreement are reasonably limited to protect Plaintiffs' legitimate business interests.

142.    Meier Sr.'s knowing, willful, and intentional breach of the Employment Agreement has caused—and will continue to cause—immediate and irreparable harm to Plaintiffs, as well as causing them to suffer other compensatory damages.

143.    Plaintiffs are also seeking all fees and costs related to these breaches and having to initiate this action for their breaches.

### COUNT VI - BREACH OF THE THIRD RESTATED LLC AGREEMENT (AS TO EDWARD C. MEIER AND ECO INDUSTRIES, INC.)

144.    Plaintiffs incorporate by reference the preceding Paragraphs of the Verified Complaint as if fully set forth herein.

145.    The Third Restated LLC Agreement is a valid, enforceable contract supported by adequate consideration entered into voluntarily and knowingly by Meier Sr., a sophisticated businessperson, and ECO, a corporate entity.

146.    Meier Sr. and ECO have breached (and continue to breach) the Third Restated LLC Agreement by stealing Plaintiffs' confidential information, disparaging Plaintiffs, and soliciting Plaintiff's existing and prospective customers and employees for Plaintiffs' direct competitor, ECO and/or Newco.  Meier Sr. and ECO have engaged in the prohibited conduct either directly or indirectly through the individual Defendants.

147.    The post-employment non-compete restrictions contained in the Third Restated LLC Agreement are reasonably limited to protect Plaintiffs' legitimate business interests.

148.    Plaintiffs are seeking injunctive relief in aid of the arbitration that they are initiating.

149.    Meier Sr.'s and ECO's knowing, willful, and intentional breach of the Agreements has caused—and will continue to cause—immediate and irreparable harm to Plaintiffs, and will cause them to suffer other compensatory damages.

150.    Plaintiffs are also seeking all fees and costs related to these breaches and having to initiate this action for their breaches.

## COUNT VII - TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS (PROSPECTIVE AND ACTUAL) (AS TO ALL DEFENDANTS)

151.    Plaintiffs incorporate by reference the preceding Paragraphs of the Verified Complaint as if fully set forth herein.

152.    Plaintiffs have a profitable business relationship with their customers.

153.    Defendants are aware of those business relationships.

154.    Defendants have and will continue to intentionally interfere with Plaintiffs' business relationships with their customers if allowed to retain and continue using the Confidential Information acquired.

155.    The Meier Family has been impermissibly procuring documents containing valuable confidential and proprietary data (e.g., driver information, financial information, and customer information, as well as internal procedures, processes, and policies) belonging to both Werner and ECM.

156.    Defendants have already begun using this confidential and proprietary data on behalf of ECO and/or Newco to improperly contact Plaintiff's customers in an attempt to invite, solicit, or induce such customers to do business with ECO/Newco and direct business away from Plaintiffs.

157.    Upon information and belief, Defendants have also used this confidential and proprietary data on behalf of ECO and/or Newco to improperly solicit current employees of ECM.

158.    Without justification or any privilege to do so, Defendants have intentionally interfered with Plaintiffs' business relationships.

159.    Defendants' actions have damaged and will continue to damage Plaintiffs in an amount to be proven at or before trial, but exceeding $75,000, exclusive of interest and costs.

**COUNT VIII – CONSPIRACY**
**(AS TO ALL DEFENDANTS)**

160.    Plaintiffs incorporate by reference the preceding Paragraphs of the Verified Complaint as if fully set forth herein.

161.    By engaging in the acts set forth above, Defendants conspired to knowingly, willfully, and purposefully commit unlawful acts designed to unfairly compete with Plaintiffs, misappropriate Plaintiffs' Confidential Information and Trade Secrets, breach and interfere with contractual obligations owed to Plaintiffs, and solicit Plaintiffs' clients and employees in violation of certain contractual and statutory obligations to Plaintiffs.

162.    Upon information and belief, Defendants agreed, combined, and acted with a common plan to breach the contractual and common law duties owed to Plaintiffs by engaging in the unlawful acts described above.

163.    Defendants are simply too sophisticated and too familiar with each other for their above actions to be inadvertent or anything other than an attempt to gain Plaintiffs' Confidential Information and Trade Secrets and relationships, among other things, without having to invest in the way that Plaintiffs did.

164.    Defendants further conspired to unfairly gain the benefits from Plaintiffs with the specific intent to injure Plaintiffs' business and benefit ECO and/or Newco.

165.    Defendants' actions have been willful, outrageous, and undertaken with reckless indifference to Plaintiffs' rights.

166.    As a direct and proximate result of the acts done in furtherance of the conspiracy, Plaintiffs have been damaged, including damage in the form of expenses related to investigative

and remedial actions taken to address the effects of the conspiracy. Plaintiffs have suffered, and will continue to suffer, these injuries.

167.    The threatened and actual injuries that Plaintiffs have suffered and will continue to suffer are immediate and irreparable.

## COUNT IX – FRAUDULENT MISREPRESENTATION
## (AS TO ALL DEFENDANTS)

168.    Plaintiffs incorporate by reference the preceding Paragraphs of the Verified Complaint as if fully set forth herein.

169.    Meier Jr. told a customer that ECM was forming a new entity, which was material and knowingly false.

170.    It is averred upon information and belief that Defendants made these representations and omissions;

     a)   With knowledge or belief of their falsity, and/or in the case of omissions, with knowledge or belief of falsity of the resulting statements;

     b)   Positively and recklessly without knowledge of their truth or falsity;

     c)   With knowledge that they were made without any basis; and/or

     d)   Without confidence in the accuracy of the representations or statements resulting from the omissions.

171.    Defendants made these false representations with the intention or expectation that it would induce a customer of ECM to leave ECM in favor of Newco.

172.    At the time Defendants made the aforesaid representations, the customer was unaware of the falsity of Defendants' representations, statements and/or implications and justifiably and reasonably relied upon Defendants' representations, statements, and implications, believing them to be true.

173.    Upon information and belief, Plaintiffs are using these misrepresentations to induce other customers to leave ECM which causes harm to Plaintiffs.

### COUNT X – ABUSE OF PROCESS
### (AS TO EDWARD C. MEIER AND ECO)

174.    Plaintiffs incorporate by reference the preceding Paragraphs of the Verified Complaint as if fully set forth herein.

175.    Meier Sr. and ECO initiated a Complaint against Plaintiffs on or around November 26, 2024, in the Allegheny County Court of Common Pleas at GD-24-013662, demanding, among other things, that Plaintiffs "supply any and all financial information concerning ECM generated since July 2021."

176.    In seeking such relief in its Complaint, Meier Sr. and ECO are attempting to improperly utilize this lawsuit to inappropriately procure highly sensitive, confidential documents belonging to Plaintiffs in order to continue harming Plaintiffs and poaching Plaintiffs' existing and potential customers. In other words, Meier Sr. and ECO, through this lawsuit, are attempting to obtain further confidential information from Plaintiffs for the purpose of benefitting their newly formed company and competing against Plaintiffs.

177.    Meier Sr. and ECO stole confidential, proprietary, and trade secret information from Plaintiffs in order to form a new, competing entity and to poach Plaintiffs' customers and employees. Meier Sr. and ECO now seek further information to continue pilfering Plaintiffs' customers and employees and to continue harming Plaintiffs' relationships with its existing and potential customers through the filing of this lawsuit.

178.    Plaintiffs have lost and will continue to lose existing customers and potential customers due to the actions of Meier Sr. and ECO.

179.    Meier Sr. and ECO cannot use the legal process to fabricate a dispute in order to obtain additional information in order to harm Plaintiffs' business practices and business relationships.

180.    Meier Sr. and ECO are perverting the legal process in order to continue causing direct injury to Plaintiffs by improperly attempting to procure more confidential information from Plaintiffs to use against them.

**COUNT XI – UNJUST ENRICHMENT**
**(AS TO ALL DEFENDANTS)**

181.    Plaintiffs incorporate by reference the preceding Paragraphs of the Verified Complaint as if fully set forth herein.

182.    Upon information and belief Defendants are using Plaintiffs' confidential business information to solicit Plaintiffs' customers, clients, vendors, and employees.

183.    Plaintiffs have expended considerable time, efforts, and resources to secure customers, clients, vendors and employees.

184.    In attempting to transition the workforce and customers, clients, and vendors, Defendants are avoiding the expense of identifying, recruiting, screening, and hiring employees and securing customers, clients, and vendors.

185.    Defendants will be unjustly enriched by the profits received as a result of the placement of employees or the solicitation of customers.

186.    To prevent the continuing unjust enrichment, Plaintiffs are entitled to payment of any profits that Newco will receive as a result of the transition.

**COUNT XII – BREACH OF FIDUCIARY DUTY**
**(AS TO ALL DEFENDANTS)**

187.    Plaintiffs incorporate by reference the preceding Paragraphs of the Verified Complaint as if fully set forth herein.

188.    Defendants owe fiduciary duties of loyalty and care to ECM as their employer and pursuant to Meier Sr. and ECO's role as a shareholder of ECM.

189.    Defendants have breached their fiduciary duty of loyalty and care and good faith and fair dealing in acting in the manner described herein.

190.    Defendants' actions were knowing, willful, negligent or grossly negligent and failed to meet even the most basic standards owed by employees, officer, directors, or shareholders pursuant to applicable law.

191.    Defendants' failures to act properly as employees and shareholders, as applicable, have directly and proximately caused damage to Plaintiffs.

### COUNT XIII – BREACH OF CONTRACT
### (AS TO MOM MEIER)

192.    Plaintiffs incorporate by reference the preceding Paragraphs of the Verified Complaint as if fully set forth herein.

193.    The Declaration of Non-Use of Proprietary Data is a valid and enforceable contract supported by adequate consideration and entered into voluntarily and knowingly by Mom Meier, a sophisticated businessperson.

194.    Mom Meier has breached (and continues to breach) the Declaration of Non-Use of Proprietary Data by using the confidential information that she admittedly stole.

195.    Mom Meier's knowing, willful, and intentional breach of the Declaration of Non-Use of Proprietary Data has caused – and will continue to cause – immediate and irreparable harm to Plaintiffs, as well as causing them to suffer other compensatory damages.

196.    Plaintiffs are also seeking all fees and costs related to these breaches and having to initiate this action for their breaches.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully requests this Court to enter an order for the

following:

1.    Judgment in Plaintiff Werner Enterprises Inc. and ECM Associated, LLC's favor and against Defendants Edward C. Meier, Phyllis Meier, Edward C. Meier Jr., Courtney Meier, Alexis Meier, Danielle Vardis, Newco, and ECO Industries;

2.    Injunctive relief:

   a)  Requiring Edward C. Meier to abide by all the restrictive covenants and provisions in his Agreements;

   b)  Requiring Defendants not to tortiously interfere with Plaintiffs;

   c)  Requiring Edward C. Meier, Phyllis Meier, Edward C. Meier, Jr. Courtney Meier, Alexis Meier, and Danielle Vardis to not engage in any solicitation or interference with Plaintiffs' business relationships through two years from the entry of this Order, such that Plaintiffs' confidential information and trade secrets and relationships are protected and the tolling provisions are applied;

   d)  Requiring Edward C. Meier not to work for any other competitor as defined in the Agreement for the same time period as required by his Agreements, such that Plaintiffs' confidential information and trade secrets and relationships are protected;

   e)  Requiring Defendants to immediately return and deliver to Plaintiffs all of Plaintiffs' property, including their documents, data, or electronic information belonging to Plaintiffs that may be in their possession after a reasonable investigation;

   f)  Enjoining Defendants from forming a new business entity, Newco, intended to serve as a direct competitor to Plaintiffs;

   g)  Prohibiting Defendants from (i) misappropriating, using, or disclosing to any person or entity Plaintiffs Confidential Information and Trade Secrets and (ii) possessing any originals, copies, or summaries of Plaintiffs Confidential Information and Trade Secrets in any form, electronic or otherwise; and

   h)  Requiring Defendants to provide monthly affidavits for a period of two years verifying that they have complied with their obligations to Plaintiffs under the Order.

3.     Additional equitable relief disgorging Defendants of any and all profits, compensation, or other amounts or benefits realized directly or indirectly as a result of or in connection with any breach of or interference with the Agreement;

4.     An award of damages in an amount to be determined by the trier of fact, together with pre- and post-judgment interest thereon at the maximum legal rate;

5.     Requiring Defendants to verify by affidavit their devices, accounts, search protocol and return of all of Plaintiffs property, including, but not limited to, proprietary information as defined by the Agreements, the Defend Trade Secrets Act and the Pennsylvania Uniform Trade Secret Act including, but not limited to, vendor information, customer information, costs and profit margins, bidding information, pricing information and unique business and negotiation strategies;

6.     A trial by jury on all issues so triable;

7.     An award of actual and exemplary damages;

8.     The costs of this action be taxed to Defendants;

9.     An award of compensatory damages, including pre- and post-judgment interest;

10.    An award of punitive damages and/or double damages to Plaintiffs pursuant to both the Defend Trade Secret Act and Pennsylvania Uniform Trade Secrets Act for Defendants' willful, intentional and malicious conduct;

11.    An award of all fees, costs and expenses in connection with this action to Plaintiffs, including their reasonable attorneys' fees pursuant to the Defend Trade Secrets Act, the Pennsylvania Uniform Trade Secrets Act and the applicable provisions of the Agreements for recovery of fees and costs; and

12.    An award any other relief as the Court may deem to be just or appropriate.


[Signature on Following Page]

Date: December 16, 2024

Respectfully submitted,

JACKSON LEWIS P.C.

*/s/ Marla N. Presley*
Marla N. Presley
PA ID No. 91020
Marla.Presley@jacksonlewis.com
Katelyn M. O'Connor
PA ID No. 308922
Katie.O'Connor@jacksonlewis.com
Francesca Iovino
PA ID No. 324229
Cella.Iovino@jacksonlewis.com
1001 Liberty Avenue, Suite 1000
Pittsburgh, PA 15222
(412) 338-5148
(412) 232-3441 Facsimile

*Counsel for Plaintiffs ECM Associated, LLC and Werner Enterprises, Inc.*

## VERIFICATION

I, Angelo Gibson, Vice President of Operations of Werner Enterprises, Inc., hereby verify that I am authorized to execute this verification. Having read the foregoing Verified Complaint, I verify that the statements therein are based on information I have personal knowledge of or that I have gathered from and confirmed with other agents of the relevant entities. While the language of the pleading is that of counsel, I verify that the averments contained in the foregoing Verified Complaint are true and correct to the best of my knowledge, information and belief.

This Verification is made subject to the penalties of 28 U.S.C. § 1746 relating to unsworn declarations under penalty of perjury.

Dated: December 16, 2024

Angelo Gibson

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on December 16, 2024, a true and correct copy of the foregoing was filed electronically using the Court's Electronic Filing System. Parties may access this filing through the Court's system. A copy of this filing was also served on Defendants at the following addresses:

Mark A. Eck
Tucker Arensberg PC
1 Ppg Pl # 1500
Pittsburgh, PA 15222
Counsel for
Edward C. Meier & Phyllis Meier
Edward C. Meier Jr.
Courtney Meier
Alexis Meier and ECO Industries, Inc.

Danielle Vardis
921 Chester Street
Springdale, PA 15144


*/s/ Marla N. Presley*
_____
Marla N. Presley